## Steeley Estate

*Robert W. Valimont*, for accountant.

SATTERTHWAITE, P. J., May 31, 1968.—The first and final account of Bucks County Bank and Trust Company, guardian of the estate of said incompetent, was presented to the court for audit, confirmation and distribution of ascertained balances on April 1,

1968, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

The accounting was filed pursuant to order of this court dated January 31, 1968, on application, as authorized by section 601 of the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, as amended, 50 PS §3601. Permission to state and file such accounting was given by the court notwithstanding that the incompetent was still living and had not been adjudicated to have regained his competency, because it appeared that, by reason of depletion of assets by court approved payments for the incompetent's support and maintenance, admitted claims of creditors now practically equal or exceed the funds available for payment thereof, that the estate is presently almost insolvent and that the rights of creditors should be adjudicated forthwith. By the same order, the court also appointed a guardian ad litem to represent the incompetent at the audit of such accounting and in connection with accountant's further application to be "removed" as guardian hereinafter considered. . . .

No further unpaid claims were specifically submitted at the audit. However, what actually amounted thereto, appearing from correspondence attached as exhibits to accountant's petition for "removal", must be considered and given effect, to wit, that of the Odd Fellows Home for the ward's future care and maintenance. A brief statement of the background facts is in order in this connection.

The incompetent had been legally declared such, and the accountant appointed guardian of his estate, by order of this court on January 28, 1962. He was a widower, then 84 years of age, having an estate of something less than $15,000, including a parcel of real estate ultimately sold for $6,700. Institutional care

was apparently required, and from early 1963 until September 29, 1966, he was cared for at a private nursing home at a rate approximating $65 per week. Expenditures by the guardian for this purpose, and others, were approved by the court on March 18, 1963. His only income, apart from the declining amount earned by investment of his gradually depleting estate, was, and is, from Social Security payments, approximating $75 per month.

On September 29, 1966, his own funds having dwindled so that he could not longer be maintained at the private nursing home, the incompetent was admitted, and has ever since resided, as a permanent guest of the Odd Fellows Home of Pennsylvania at the rate of $180 per month ($190 after January 1, 1968) so long as he remains ambulatory. It was also understood as a term and condition of his admission that his entire estate be turned over to the home and that, in consideration thereof and notwithstanding the exhaustion of his assets, he would be cared for therein for the remainder of his life. Such understanding is formally documented by letter from the secretary of the board of said home addressed to the within accountant dated January 25, 1968, and a copy thereof is attached to accountant's petition for "removal".

The auditing judge hereby approves the "quid pro quo" for such undertaking by the home, to wit, the payments already made by accountant to the home as portrayed in the within account and the petition for adjudication, plus the further transfer to the home as a contract-creditor of the meager, but entire net balance for distribution in accountant's hands. Such balance is hereby so awarded. . . .

The only other question for adjudication is the disposition of accountant's request, in the same petition by which it sought leave to file the account, that it be "removed" as guardian, on the ground that the in-

competent would no longer have any funds or estate for it to administer except (1) a paid-up life insurance policy on his life which would be payable on his death to his estate, carried and included in accountant's above-stated balance for distribution at the nominal value of $1, and (2) continuing Social Security payments, and that the court should direct these latter items henceforth to be paid directly over to the Odd Fellows Home of Pennsylvania under the "small estate" procedures authorized by sections 201 and 202 of the Incompetents' Estates Act of 1955, 50 PS §3201 and §3202.

On presentation of this petition, the court entered its preliminary order, not only authorizing the filing of the account and appointing a guardian ad litem, as already noted, but also authorizing accountant to join with any other interested parties in making appropriate applications to the Social Security Administration for change in payment of the Social Security benefits thereafter accruing to said incompetent so that they might in the future be paid directly to the Odd Fellows Home of Pennsylvania rather than to accountant as guardian. At audit, such application was still pending and undisposed of by the Social Security Administration. However, by subsequent letter dated May 10, 1968, a copy of which has been submitted by accountant and has been lodged of record by the auditing judge with the petition for adjudication, that administration has now directed that the change so requested had, in fact, been approved and effectuated.

In view of this change of circumstance, the guardian, and this court, for that matter, will no longer have any concern whatsoever with the incompetent's benefits under the Social Security program. The mode of payment, and the designation of the party payee or holder, of such benefits in the right of a person under

disability are matters for the Social Security Administration and not the local courts. Compare Coyle Estate, 1 D. & C. 2d 391, 4 Fiduc. Rep. 384 (1954).

Accordingly, upon distribution of the awards herein made, and the life insurance policy may be included in the award to the Odd Fellows Home, accountant will have no further funds or assets of the incompetent now or hereafter to come into its control; its duties as guardian of the estate will factually have terminated. Since, therefore, it would appear that it will have obtained confirmation of its final account and made distribution to the parties entitled, it will accordingly be eligible to seek its formal discharge as guardian under section 324 of the Incompetents' Estates Act of 1955, 50 PS §3324, through the procedure prescribed by Supreme Court-Orphans' Court Rules, sec. 12, rule 7, as amended effective February 1, 1968, and Rules *1207.1 and *1207.2 of this court. It is to be hoped, however, that accountant will not deem it necessary to seek formal discharge; the possibility of future assets is always present, even though probably remote, and the continued formal existence of the guardianship might save future expense and inconvenience of reappointment. Accountant would seem to be running no real risk in currently closing its files in this matter in reliance upon the audit of its present and ostensibly final accounting just as it would on audit of its account as executor of a decedent's estate, without a formal decree of discharge. Even if an account turn out not to be a final one but only partial in legal contemplation, it is nevertheless final and, hence, conclusive with respect to all that it does actually contain: Comerford Estate, 388 Pa. 278, 297 (1959).

In view of the foregoing considerations, accountant's prayer for its own "removal" probably has become moot. In any event, such request should be and

hereby is refused as inappropriate on the grounds originally urged in support thereof, without prejudice of course, to its right to petition for "discharge", if desired, at a proper time. This court hereby states of record its concurrence in the principles relied upon by Judge Taxis for the Orphans' Court of Montgomery County in Hynek Estate, 11 D. & C. 2d 540, 7 Fiduc. Rep. 306 (1957), declining to permit the discharge of a guardian (there, of a minor) while the disability continued merely because the assets had been depleted to an amount less than the statutory ceiling defining a "small estate" which might initially have been administered without a formal guardianship.

If the estate has been, or by awards made pursuant to current audit will be, completely and entirely exhausted, and there is no reasonable likelihood that any additional funds will accrue to the incompetent during disability, a guardian would seem entitled, if he deems it necessary, to seek his discharge under section 324. If, on the other hand, the estate will continue to be in funds, even though depleted in amount, the guardian, absent the most unusual circumstances, should be required to continue as such, his account could not be regarded as "final", and section 324 would have no application . . .

And now, May 13, 1968, the within adjudication is directed to be filed and is hereby confirmed nisi.